

SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
Rose F. Luzon (SBN 221544)
rluzon@sfmslaw.com
Kolin C. Tang (SBN 279834)
ktang@sfmslaw.com
401 West A Street, Suite 2350
San Diego, CA 92101
Telephone: (619) 235-2416
Facsimile: (619) 234-7334

RECEIVED
'12 SEP 12 P 4: 29
RICHARD W. WIEKING, CLERK
U.S DISTRICT COURT
NO. DIST. OF CA.

FILED
SEP 12 2012
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

*Attorneys for Plaintiff and the Proposed Class*
*(additional counsel on signature page)*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

REBEL ELY, Individually and On Behalf of
All Others Similarly Situated,

        Plaintiff,

vs.

NESTLE PURINA PET CARE
COMPANY, WAGGIN' TRAIN, LLC,
CVS CAREMARK CORPORATION and
DOES 1-10,

        Defendants.

CASE NO.

C 12 4785

JCS

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

## CLASS ACTION COMPLAINT

Plaintiff, Rebel Ely, brings this class action complaint against Defendants, Nestle Purina Pet Care Company, Waggin' Train, LLC, and CVS Caremark Corporation, to seek redress for herself and other individuals similarly situated and injured by the sale of contaminated chicken jerky pet food throughout the United States of America.

## NATURE OF THE CASE

1.    Defendant, Nestle Purina Pet Care Company ("Nestle Purina"), is a company engaged in the business of manufacturing, producing, marketing, distributing, advertising and selling dog food and dog treats, and it has been in the business of doing so since 1957. Nestle Purina has spent millions

1

1  of dollars in advertising and promoting its pet food products. It holds itself out to the public as a
2  manufacturer of safe, wholesome, nutritious and high-quality pet food.

3      2.      As of February of 2012, over 500 consumers who purchased chicken jerky dog
4  treats made complaints to the FDA concerning the safety of Waggin' Train Chicken Jerky pet food
5  treats.

6      3.      These chicken jerky treats, when ingested by an animal, cause it to suffer from
7  seizures, vomiting, diarrhea, incontinence, excessive thirst, neurological problems, including an
8  awkward tilt of the pet's head, loss of balance, pain, and ultimately renal problems, respiratory
9  problems and death.

10     4.      Nestle Purina's actions in selling the contaminated food and failing to issue a
11 recall and continuing to market and sell the chicken jerky treats are reckless and in breach of its duties
12 and warranties to its customers. Those actions were a proximate cause of injury and death of currently
13 untold numbers of pets, including Plaintiff's Golden Retriever, as more fully described below.

14     5.      On behalf of a nationwide class, Plaintiff seeks redress for that misconduct.

15

16                                    **PARTIES**

17     6.      Plaintiff, Rebel Ely ("Plaintiff" or "Ely"), is a citizen of the State of California, residing
18 in San Mateo, California.

19     7.      Defendant, Nestle Purina, is a Missouri corporation, with its principal place of
20 business at Checkerboard Square, St. Louis, Missouri. Nestle Purina regularly does business in the
21 State of California and sells its pet products throughout California, including in San Mateo, California.

22     8.      Defendant, Waggin' Train, LLC ("Waggin' Train"), is a South Carolina limited
23 liability corporation, with its principal place of business at 1924 Pearman Dairy Road, Anderson,
24 South Carolina. Waggin' Train regularly does business in the State of California and sells its pet
25 products throughout California, including in San Mateo, California.

26     9.      Defendant, CVS Caremark Corporation ("CVS"), is a Delaware corporation, with its
27 principal place of business in Woonsocket, Rhode Island. CVS regularly does business throughout the
28

                                        2

United States and throughout California, and oversees its retail division CVS/Pharmacy a/k/a "CVS,"

selling pet food products, including the Waggin' Train Chicken Jerky Treats.

      10.    Does 1 through 10 are listed and, upon information and belief, there are other culpable

defendants who were involved in the production and distribution of said contaminated pet food

products. Plaintiff will seek leave to amend when these other entities are made known to her.

## JURISDICTION AND VENUE

      11.    This Court has jurisdiction over all claims asserted herein under 28 U.S.C. §1332(d).

The amount in controversy exceeds $5 million, exclusive of interest and costs. Plaintiff and class

members are of diverse citizenship to each other (as they reside in California and in other states), and

minimum diversity exists pursuant to 28 U.S.C. Section 1332(d)(2). There are over 100 class

members in the proposed class.

      12.    Personal jurisdiction over each defendant is proper because each defendant: (a) does

and has done business in California and within this District, with the claims asserted herein arising

from such business; and (b) committed tortious acts which are the subject of the complaint in

California, and within this District.

      13.    Venue in this District is proper pursuant to 28 U.S.C. § 1391 because, among other

things, many of the acts alleged and complained of herein occurred in this District, Defendants have

transacted business within this District, and Plaintiff resides in this District.

      14.    Intradistrict Assignment: Venue is proper in the San Francisco/Oakland Division

because a substantial part of the events and omissions complained of herein occurred here.

## FACTS

      15.    Defendants, Waggin' Train and Nestle Purina, hold themselves out to consumers

and the general public as manufacturers of safe, nutritious, and high-quality dog food.

      16.    Defendants, Waggin' Train and Nestle Purina, make numerous express warranties

about the quality of their food and their manufacturing facilities.

      17.    For example, Nestle Purina represents that its chicken jerky product is

3

"wholesome," "nutritious and great tasting" and that the purchaser should "feel confident that you are giving your dog a wholesome treat that is both healthy and delicious."

18.     Nestle Purina intended for pet owners to believe that the statements made in its packaging were true and that its pet food was of first-rate quality.

19.     Based on hundreds of complaints to the FDA, it had issued warnings, as recently as November 18, 2011, about dogs becoming ill after consuming chicken jerky dog treats which were made in China.

20.     In April of 2012, the FDA made pre-announced visits to several pet treat manufacturing plants in China to follow-up on complaints received by the FDA's Center for Veterinary Medicine ("CVM") relating to dogs becoming sick and dying following the consumption of chicken jerky treats.

21.     The FDA was unable to collect samples or test any of the chicken jerky product during its inspection unless it agreed to certain sampling conditions set by the Department of Supervision on Animal and Plant Quarantine, General Administration of Quality Supervision, Inspection and Quarantine of the People's Republic of China ("AQSIQ"), because of a dispute as to where food Product would be tested.

22.     No agreement between the FDA and AQSIQ was reached and, as a result, no samples were tested, greatly inhibiting the ability of the FDA to determine the exact contaminant in the chicken jerky treat product that has continued to cause illness and death to dogs.

23.     In spite of the representation on the packaging, the chicken jerky products distributed and sold by Nestle Purina were not wholesome, were not nutritious and were not healthy for the pets, but, instead, were harmful, dangerous and fatal for pets.  The packaging did not warn of any danger from feeding its contents to dogs.

24.     Waggin' Train and Nestle Purina have marketed their products and continued to distribute their products without determining whether the products are, in fact, safe for the purposes intended and without determining whether or not they will have a detrimental or fatal effect on dogs.

25.     Waggin' Train and Nestle Purina marketed the chicken jerky treats without determining the safety of the product.

4

## FACTS RELATING TO THE NAMED PLAINTIFF

26. On or around March 3 and 4 of 2012, Ely bought five packages of Waggin' Train Chicken Jerky Treats from her local CVS/pharmacy in Foster City and San Mateo, California. CVS/pharmacy is a retail division of CVS Caremark Corporation. She purchased these products for her 6-year-old-dog, Mocha, which is a Golden Retriever.

27. Plaintiff's Golden Retriever consumed the treats following that date.

28. Mocha began having symptoms within days after ingesting these chicken jerky treats produced by Waggin' Train and Nestle Purina. His symptoms began with apparent fatigue and lethargy and continued to worsen. Ely observed Mocha excessively panting and urinating. His other symptoms included vomiting, diarrhea, dehydration, and loss of balance.

29. On or around March 13, 2012, Ely contacted Mocha's veterinarian, who advised Ely to immediately take Mocha to an emergency veterinary hospital for testing and treatment.

30. Laboratory testing determined that Mocha had elevated levels of glucose.

31. Mocha's health continued to decline, so on or around March 19, 2012, Ely took him to the Veterinary Hospital at the University of California, Davis, where Mocha stayed for approximately three days for treatment to improve the functioning of his digestive organs. Because this veterinary hospital was over three hours from Ely's home, she stayed in a local motel while Mocha received treatment.

32. After Mocha was released from the care of the veterinary hospital, he continued to have health problems and requires a special diet, injections, and follow-up visits and testing. Mocha also had secondary infections as a result of his compromised immune system, also requiring treatment.

33. Although Mocha survived his sickness caused by the chicken jerky treats, his sickness was a devastating ordeal for Ely. Ely was forced to take off almost two weeks of work to care for Mocha, as well as paying extensive veterinary bills, and witness the rapid decline in health of her pet after he ingested Waggin' Train Chicken Jerky Treats.

5

1

## CLASS ALLEGATIONS

2      34.      Ely brings this action, pursuant to FRCP 23(a) and FRCP 23(b)(3), on behalf of herself

3 and a class consisting of herself and all others who purchased chicken jerky pet food in the United

4 States sold and distributed by Waggin' Train and Nestle Purina (the "Class").

5      35.      Upon information and belief, the Waggin' Train Chicken Jerky Treats were

6 produced by JOC Greatwall Corporation, Ltd. of Nanjing, China.

7      36.      Upon information and belief, there are over 100,000 members of the Class, such

8 that joinder of members is impracticable.

9      37.      Common questions of law and fact exist as to all members of the Class and

10 predominate over questions affecting individual members.  Common questions for the Class include:

11      (a)      Did Waggin' Train and Nestle Purina act negligently in failing to prevent

12              contamination of their pet food?

13      (b)      Did Waggin' Train, Nestle Purina, and CVS act negligently in failing to warn their

14              customers in a timely and effective manner of the danger of their pet food?

15

16      (c)      Did Waggin' Train, Nestle Purina, and CVS breach express and/or implied

              warranties relating to the sale of their pet food?

17

18      (d)      Did CVS act negligently in failing to remove this product from

              the shelves after being alerted of the FDA warnings?

19

20      38.      Plaintiff Ely will fairly and adequately protect the interests of the Class, her claims

21 are typical of the claims of the members of the Class, and she has retained counsel competent and

22 experienced in class action litigation.

23      39.      A class action is superior to other available methods for fairly and efficiently

24 adjudicating this controversy because, among other things, (a) joinder of all members of the Class is

25 impracticable, and (b) many members of the Class cannot vindicate their rights by individual suits

26 because their damages are small relative to the burden and expense of litigating individual actions.

27

28

6

## COUNT I

### (Breach of Warranties)

40.    Plaintiff incorporates by reference all the foregoing allegations.

41.    Waggin' Train, Nestle Purina, and CVS have breached express warranties to Plaintiff and violated the Uniform Commercial Code.

42.    Waggin' Train, Nestle Purina, and CVS have breached implied warranties to Plaintiff and violated the Uniform Commercial Code.

43.    Waggin Train, Nestle Purina, and CVS have breached the implied warranty of merchantability.

44.    As a proximate cause of this misconduct, Plaintiff and the Class suffered actual damages, including, without limitation, the cost of the contaminated pet food and resulting veterinary bills, and many putative class members may incur costs for the replacement of their pets.

WHEREFORE, Plaintiff, on behalf of herself and the Class, prays for the following relief:

    1.    An order certifying the Class as defined above;

    2.    An award of actual damages;

    3.    Appropriate injunctive relief;

    4.    Medical monitoring damages;

    5.    Reasonable attorney's fees and costs; and

    6.    Such further and other relief the Court deems appropriate.

## COUNT II

### (Negligence)

45.    Plaintiff incorporates by references all of the foregoing allegations.

46.    Waggin' Trail, Nestle Purina, and CVS owed their customers a duty to offer safe, non-contaminated products in the stream of commerce.

47.    Waggin' Train, Nestle Purina, and CVS breached this duty by failing to exercise care in the production, distribution, and/or sale of the contaminated and dangerous pet food described herein.

7

48.     Waggin' Train, Nestle Purina, and CVS breached this duty by failing timely and effectively to warn Plaintiff and the Class of the dangers of the chicken jerky treats even after they had actual knowledge of the fact through hundreds of complaints to the FDA and they were aware of the resulting risks.

49.     As a proximate cause thereof, Plaintiff and the Class suffered actual damages, including, without limitation, the cost of the contaminated pet food and any resulting veterinary bills, and many putative class members may incur costs for the replacement of their pets.

WHEREFORE, Plaintiff, on behalf of herself and the Class, prays for the following relief:

       1.     An order certifying the Class defined above;

       2.     An award of actual damages;

       3.     Appropriate injunctive relief;

       4.     Medical monitoring damages;

       5.     Reasonable attorneys' fees and costs; and

       6.     Such further and other relief the Court deems appropriate.

## COUNT III

### (Unjust Enrichment)

50.     This count is against all Defendants.

51.     Defendants, and each of them, obtained a benefit, to which they were not entitled through the sale of sub-standard dog treats for the purchase price thereof.

52.     Defendants, and each of them, had knowledge of the benefit conferred upon them by Plaintiff and others like Plaintiff. Defendants, and each of them, made a calculated profit from the sale of the dog treats, while Plaintiff and others like Plaintiff suffered damages as a result of the transaction.

53.     Defendants have voluntarily and deliberately accepted and repainted those profits and benefits, without delivering safe and healthy dog treats.

54.     Defendants' retention of the money they obtained (from Plaintiff and others like

8

1    Plaintiff) from the sale of dog treats constitutes unjust enrichment.

2          WHEREFORE, Plaintiff, on behalf of herself and the Class, prays for the following

3    relief:

4          1.    An order certifying the Class defined above;

5          2.    An order disgorging all profits, benefits, and other compensation obtained by

6                Defendants, and each of them, as a result of their wrongful conduct; and

7          3.    Such further and other relief the Court deems appropriate.

8                              **JURY DEMAND**

9          Plaintiff requests trial by jury of all claims that can be so tried.

10

11   Dated: September 12, 2012                SHEPHERD, FINKELMAN, MILLER &
                                             SHAH, LLP
12

13                                           Rose F. Luzon (SBN 221544)
                                             rluzon@sfmslaw.com
14                                           Kolin C. Tang (SBN 279834)
                                             ktang@sfmslaw.com
15                                           401 West A Street, Suite 2350
                                             San Diego, CA 92101
16                                           Telephone: (619) 235-2416
                                             Facsimile: (619) 234-7334
17

18                                           Bruce E. Newman
                                             bnewman@bpslawyers.com
19                                           BROWN, PAINDIRIS & SCOTT, LLP
                                             747 Stafford Avenue
20                                           Bristol, CT 06010
                                             Telephone: (860) 583-5200
21                                           Facsimile: (860) 589-5780

22
                                             *Attorneys for Plaintiff and the Proposed Class*
23

24

25

26

27

28

                                   9
                                                    **CLASS ACTION COMPLAINT**